## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTERRIAN MOORE,

           **Plaintiff,**

**v.**                                         Case No. 3:18-CV-1720-NJR-MAB

DUSTIN BOWLES,

           **Defendant.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Anterrian Moore, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges that Defendant Dustin Bowles was deliberately indifferent due to his failure to protect Moore from an attack by his cell mate. According to Bowles, Moore's claim cannot proceed because he failed to exhaust his administrative remedies before filing suit. The Court held an evidentiary hearing on December 4, 2019.

### FINDINGS OF FACT

Moore was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") during the alleged incident. On May 1, 2018, Moore notified a correctional officer ("CO") that his cellmate was threatening to strangle him in his sleep using a cable cord (Doc. 1, p. 6). The CO reported these threats to his superior, who arranged for a meeting with internal affairs ("IA") the same day. *Id.* Moore claims that IA Officer Dustin Bowles offered him two options: he could refuse housing, which would result in a new cell assignment after punishment with segregation for a disciplinary violation; or he could

sign a release stating that he did not fear for his safety and go back to his cell. *Id.* To avoid segregation and his personal items being mishandled, Moore states he reluctantly chose the latter option and was attacked by his cellmate on May 29, 2018, after a disagreement regarding catching their cell door. *Id.* at 6-7. Moore says he sustained "minor" scrapes and bruises and a "major" back injury during the scuffle, for which he was denied timely treatment by "healthcare." Moore asserts the entire incident could have been avoided if he was reassigned to a new cell in when he requested. *Id.* at 6-8.

In November 2018, Bowles filed a motion for summary judgment for failure to exhaust administrative remedies (Doc. 48). In that motion, Bowles submitted an affidavit from Chalene Hale, a grievance officer, who searched Pinckneyville's records for grievances submitted by Moore in 2018 against Bowles involving Moore's cell placement or safety concerns about Moore's cellmate (Declaration of Chalene Hale, Doc. 49-1). She found one emergency grievance dated June 7, 2018, which was deemed a non-emergency by the Chief Administrative Officer ("CAO") and returned to Moore. Moore included this denied emergency grievance in his response (Doc. 55, pp. 6-7).

Bowles also submitted an affidavit from Sarah Johnson, a chairperson for the Administrative Review Board ("ARB"), who searched the ARB's records for grievances submitted by Moore in 2018 against Bowles involving Moore's cell placement or safety concerns about Moore's cellmate. (Declaration of Sarah Johnson, Doc. 49-2). She found one directly appealed grievance to the ARB dated June 7, 2018, concerning an incident with Moore's cellmate. *Id.* The grievance was received on June 18, 2018, but included no facility response and was consequently denied. *Id.* Moore further requested a response

from the ARB in December 2018, and the ARB replied referencing their earlier denial. *Id.* Moore included the ARB Return of Grievance Form along with the returned grievance in his response (Doc. 55, p. 5). Johnson also testified to the same facts as her affidavit during the hearing.

In his response to Bowles's motion, Moore admits receiving his returned emergency grievance (Doc. 55, p. 1). He claims that after receiving that response, he made copies of the grievance and resubmitted it through the "normal grievance process." *Id.* at 2. Moore then states almost a year later, on May 9, 2019, having received no response regarding his grievance, he sent Assistant Attorney General Jeanine Armstrong a copy of the grievance with a letter claiming that he resubmitted the grievance as advised by the CAO and to the ARB and did not receive a response. *Id.* After waiting six months for a response, he then wrote a letter to ARB, which responded, stating that his grievance was returned in June 2018. (Doc. 55, p. 1, 11). Moore claims that he did attempt to exhaust all his available remedies, and hints that the grievance process was unavailable to him. He also claims that ARB's response to his letter was deficient because it was not a "formal response." Moore also testified during the hearing, stating that when his emergency grievance was rejected by the CAO, he sent the same grievance to his counselor through the mailbox and to the ARB.

LEGAL STANDARDS

## A.      Summary Judgment

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

**B.     Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Under the procedures set forth in the Illinois Administrative Code, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). The grievance must be filed with the inmate's counselor, unless certain discrete issues are being grieved. *Id.* If the complaint is not resolved through a counselor, the grievance is considered by a grievance officer who must render a written recommendation to the CAO (usually the Warden) within two months of receipt, "when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Warden then advises the inmate of a decision on the grievance. *Id.*

An inmate may also file an emergency grievance that is forwarded directly to the Warden. *Id.* at § 504.840. If "there is a substantial risk of imminent personal injury or other

serious or irreparable harm to the offender," consideration of the grievance will be expedited. *Id.* at § 504.840(a) and (b). An inmate may appeal the Warden's decision to the IDOC Director. *Id.* at § 504.850(a). The appeal must be in writing, must be directed to the ARB, and must be received by the ARB within 30 days of the date of the Warden's response. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within six months of receipt of the appeal. *Id.* § 504.850(d) and (e).

## DISCUSSION

While it is true that defendants bear the burden of establishing the affirmative defense of failure to exhaust administrative remedies, *see Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011), Bowles has met that burden here. From an administrative perspective, it does not appear that Moore filed a grievance concerning his fall with any counselor at Pinckneyville. The records suggest that he filed an emergency grievance to the CAO and the ARB directly. The CAO rejected his emergency grievance because it was considered a non-emergency. The ARB grievance was rejected because it was submitted without the required facility responses.

That leads to the question of whether the grievance procedures at Pinckneyville were unavailable to Moore. In this case, the Court does not find Moore's testimony regarding attempted exhaustion credible. He was unable to provide plausible specifics about the grievance he allegedly submitted "through the normal grievance process." Conversely, Hale and Johnson explained the process of searching their respective

databases for Moore's grievance, coming up empty-handed in trying to locate a properly exhausted grievance. Weighing the two conflicting sides, one based on testimony and tangible, corroborating evidence with the other based purely on testimony without corroborating evidence, the Court simply finds Bowles's contention regarding exhaustion more believable.

## CONCLUSION

Simply stated, based on the documentary evidence and testimony, Moore's emergency grievance and ARB grievance were not sufficient to exhaust his administrative remedies. Accordingly, the Motion for Summary Judgment filed by Bowles (Doc. 48) is **GRANTED**. Defendant Dustin Bowles is **DISMISSED without prejudice**, and this entire action is **DISMISSED**.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  December 6, 2019**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

Out of an abundance of caution, the Court advises Moore as follows. If Moore wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit. If Moore chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Moore files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Moore wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of

law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Moore showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Moore chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. Fed. R. App. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Moore cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Moore plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).